UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

HEXAGON METROLOGY, INC., and
HEXAGON HOLDING, INC,

Plaintiffs,

CA 08 268 ML
C.A. No.

v.

THOMAS MOON,

Defendant.

## VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiffs Hexagon Metrology, Inc. and Hexagon Holding, Inc. (hereinafter together referred to as "Hexagon") for their Verified Complaint against Defendant Thomas Moon ("Moon") state as follows:

1. This action arises out of various torts, breaches of contract, and violations of the Rhode Island Uniform Trade Secrets Act, R.I. Gen. Laws § 6-41-1 *et seq.*

## JURISDICTION AND PARTIES

2. Hexagon Metrology, Inc. is a Rhode Island corporation, with its principal place of business in North Kingstown, Rhode Island.

3. Hexagon Holding, Inc. is a Delaware corporation.

4. Upon information and belief, Moon is a citizen and resident of Texas residing at 10865 County Road 484, Nevada, Texas 75173.

5. The amount in controversy exceeds $75,000, exclusive of interest, costs and attorneys' fees.

6. Jurisdiction exists in this Court pursuant to 28 U.S.C. § 1332.

## GENERAL ALLEGATIONS

7. Hexagon is a world-leading supplier of metrology systems. Its operations encompass hand tools, fixed and portable coordinate measuring machines, GPS systems, level meters, laser meters, laser trackers, laser interferometers, total stations, sensors for airborne measurement, aftermarket services and software systems for one, two or three-dimensional measurements. (*See* **Exhibit A**, Hexagon Website.)

8. Defendant Moon was hired by Leica Geosystems around 2004 as an account executive. He was employed by Leica Geosystems when it was purchased by Hexagon in 2006. Thereafter, Moon became an employee of Hexagon until his resignation, effective July 2, 2008. At the time of his resignation, Moon held the position of District Sales Manager for Hexagon. Prior to his employment with Leica Geosystems and Hexagon, Moon had no experience in the metrology industry.

9. In his positions with both Leica Geosystems and, later, Hexagon, Moon was responsible for selling laser tracker systems, coordinate measuring machines (CMMs), PC-DMIS software, portable arms, and vision systems, among other things. With that, his duties and responsibilities included meeting directly with customers and potential customers to learn of their requirements for laser trackers and other products, reporting to Hexagon customer feedback concerning products, coordinating training, and helping to devise strategies for promoting and selling products. Moon had extensive involvement with Hexagon customers, including, but not limited to, Vought Aircraft, Lockheed Martin and Bell Helicopter. The geographic area that Moon was responsible for included Texas and Oklahoma.

10. As part of his employment, Moon signed an Employment Agreement containing non-compete, non-solicit, and non-disclosure clauses referred to *infra*, accepting those terms as the terms of his employment with the Rhode Island based Hexagon. Moon regularly accessed

and utilized, and ultimately misappropriated, Hexagon's confidential information and databases housed on Hexagon's computer servers, which are located in Rhode Island. Further, in early 2007, Moon traveled to and attended an open house in Rhode Island for Hexagon customers in the course of his job duties. He also regularly contacted and dealt with Hexagon personnel located in Rhode Island in the course of his job duties.

11. On March 22, 2006, Moon executed an Employee Invention, Non-Competition, and Confidentiality Agreement with Hexagon ("Agreement"). A copy of the standard Agreement is attached to this Complaint as **Exhibit B** and incorporated herein by reference.

12. Pursuant to the Agreement, Moon agreed as follows:

> 4. **Confidentiality**. I acknowledge that all Confidential Information is and shall at all times remain the property of the Company. I agree that, except as required in my duties to the Company, I will never directly, indirectly, or otherwise use, disseminate, disclose, lecture upon, or publish articles concerning Confidential Information without having first obtained written permission from the Company to do so. I will safeguard and maintain on Company premises, to the extent possible in the performance of my work for the Company, all documents and things that contain or embody Confidential Information.
>
> ***
>
> 7. **Nonsolicitation**. Independent of any obligations I might have under §9, I agree that I will not, during my employment and for a period of 90 days after my voluntary termination of employment with the Company, directly or indirectly, (a) divert or attempt to divert any person, concern, or entity which is furnished services by the Company from doing business with the Company or otherwise to change its relationship with the Company; or (b) induce or attempt to induce any customer or supplier of the Company to cease being a customer or supplier of the Company or otherwise to change its relationship with the Company.
>
> 8. **Solicitation of Company Employees**. I agree that, during my employment with the Company and for a period of one (1) year following termination of my employment with the Company, whether terminated with or without cause, I shall not directly or indirectly, solicit or induce, or attempt to solicit or induce, any employee of the Company to leave the Company for any reason whatsoever.
>
> 9. **Restrictions on Competition**. Independent of any obligations that I might have under §7, I agree that I will not, for a period of 90 days after my voluntary termination of employment with the Company, render services directly or indirectly, whether as principal or as agent, officer, director, employee,

> consultant, shareholder, or otherwise, alone or in association with any other person, corporation, or entity, to or for any Conflicting Organization within the United States. I may, however, accept employment in such territory with a Conflicting Organization whose business is diversified, and which as to the part of the business in which I am engaged is not a Conflicting Organization, provided that the Company, prior to my accepting such employment shall receive separate written assurances satisfactory to the Company from such Conflicting Organization and from me, that I will not render services, directly or indirectly, in connection with any Conflicting Product. I recognize that the Company conducts or intends to conduct business within the geographic area set forth herein, and therefore, I agree that this restriction is reasonable and necessary to protect the Company's business.
>
> ***
>
> 15. **Remedy**. Any breach or violation by me of the Agreement, including but not limited to §7 and §9, will result in immediate and irreparable injury to the Company in amounts difficult to ascertain. Therefore, should I breach any portion of this Agreement, I agree that the Company shall be entitled to proceed directly to court to obtain the remedies of specific performance and injunctive relief (including but not limited to temporary restraining orders, preliminary injunctions, and permanent injunctions) without the necessity of posting a bond or other undertakings therewith. [**Exhibit B**, ¶¶ 4, 7-9, 15.]

13. Additionally, the Agreement has a Rhode Island choice of law provision. *Id.* at ¶ 12.

14. During the course of his employment with Hexagon, Moon had access to and utilized on a regular basis Hexagon's most confidential and proprietary information and trade secrets, including, but not limited to, Hexagon's ACT customer database, processes, research and development, products and services under development, markets and selling strategies, servicing, customer lists, customer requirements, business methods or practices, training and training programs, pricing and pricing strategies, customer information, customer pricing, margin information, and the methodology for improving accuracy statements of laser trackers.

15. A sample of Hexagon's confidential and proprietary information and trade secrets that Defendant Moon had access to and utilized during his employ is attached as **Exhibit C.**[1]

16. Moon also acquired intimate knowledge concerning Hexagon's customers' service needs and preferences, customer pricing and contractual details, prospective customer information, and employee information. With that, Moon was responsible for servicing Hexagon's customers, maintaining and cultivating those customer relationships, and developing business.

17. The information to which Defendant Moon was exposed is of great value not only to Hexagon, but also to its competitors who do not possess or have access to this information. The information derives independent economic value and is not generally known to or readily ascertainable by proper means by other persons or companies.

18. For this reason, Hexagon takes reasonable steps to ensure that its information stays confidential. Such measures include the use of non-compete, non-solicit, and confidentiality agreements, password protection, restricted building and facility access, and access to information on a need-to-know basis.

19. Moon voluntarily resigned from his employment at Hexagon effective July 2, 2008.

20. Around that time, Moon indicated that he was going to work for a company called Automated Precision, Inc. ("API") – a direct competitor of Hexagon - as its General Business Manager for its Metrology Product Division where he would be responsible for managing and motivating API's entire North, Central, and South Americas direct and indirect sales forces to promote the sales of API's metrology products. API develops and produces metrology products,

[1] **Exhibit C** contains a redacted sample of Hexagon's trade secrets to protect this information's confidentiality. An unredacted sample will be made available for the Court to conduct an *in camera* review upon request.

including, but not limited to, laser trackers and laser interferometers. (*See* **Exhibit D**, API Website.)

21. On July 8, 2008, Collin Webb sent Moon a letter reminding him of his non-compete, non-solicit, and non-disclosure obligations under his Agreement with Hexagon. (*See* **Exhibit E**, 7/8/08 Moon Letter.)

22. Moon has since refused to abide by his non-compete obligations and is working for API.

23. Upon information and belief, Moon is performing the same services, serving the same market area, and serving the same customers that he worked with while at Hexagon for a direct competitor – API.

24. Moon has wrongfully used, and will inevitably continue to use, Hexagon's confidential information and trade secrets that he learned during his employment with Hexagon. Further, he is working for a direct competitor of Hexagon - all in knowing violation of his Agreement.

25. Indeed, between June 22, 2008 and June 23, 2008 (less than two weeks before Moon's last day at Hexagon), Moon copied his entire Hexagon-issued laptop computer hard drive to a 500GB external storage device. Moreover, thousands of Hexagon's confidential and trade secret files have been stored on Moon's home computer. Many of these files, both on the 500GB storage device and the home computer, contain Hexagon's most confidential, proprietary, and trade secret information. A sample of the documents that Moon stole is attached as **Exhibit C** to this Complaint.

26. Furthermore, in an apparent attempt to conceal his surreptitious activity, Moon deleted thousands of files from his Hexagon-issued laptop in the last two days of his employment with Hexagon. Additionally, he failed to return the 500GB external storage device that he used

to copy his entire Hexagon-issued laptop computer, along with five to ten other external storage devices that he attached to his Hexagon-issued laptop that may also contain Hexagons' confidential information and trade secrets.

27. The confidential information and trade secrets to which Moon had access will directly aid his employment with a direct competitor, including API.

28. As a direct consequence of Moon's actions, Hexagon stands to lose its employees, clients and customers, confidential, proprietary and trade secret information, the goodwill and referral business of its clients and customers, and revenues in an amount that cannot be readily ascertained.

29. Hexagon is also faced with the substantial risk that Moon will unlawfully use Hexagon's customer, prospect, and employee information and trade secrets to Hexagon's competitive disadvantage. As a result of Moon's actions, Hexagon has suffered and will continue to suffer irreparable harm.

30. If Moon is not immediately barred from violating his Agreement, from using Hexagon's confidential, proprietary, and trade secret information to solicit customers and employees of Hexagon, and from otherwise participating in activities that violate the non-competition, non-solicitation, and non-disclosure provisions of his Agreement with Hexagon, Hexagon will continue to suffer irreparable harm.

31. Hexagon lacks an adequate remedy at law to address the substantial and irreparable harm it is suffering as the result of Moon's actions.

32. If a temporary restraining order is not issued, as requested herein, immediate and irreparable injury will result to Hexagon before Moon can be heard in opposition.

**COUNT I**
**BREACH OF CONTRACT**
**NON-COMPETITION PROVISION**

33. Paragraphs 1 through 32 are realleged and incorporated by reference as if fully set forth herein.

34. The Agreement executed by Moon is a valid and binding contract.

35. Moon's employment with API constitutes a breach of the non-competition provision contained in Paragraph 9 of the Agreement, attached as **Exhibit B**.

36. As a result of Moon's conduct, Hexagon has suffered irreparable injury, and there is immediate and imminent danger that Hexagon will continue to suffer irreparable injury for which there is no adequate remedy at law.

37. Hexagon is entitled to preliminary and permanent injunctive relief against further breaches of the Agreement. Hexagon further has suffered damages as a direct result of these breaches, which include, but are not limited to, lost profits and attorneys' fees.

**COUNT II**
**BREACH OF CONTRACT**
**NON-DISCLOSURE/CONFIDENTIALITY PROVISION**

38. Paragraphs 1 through 37 of this Complaint are realleged and incorporated herein by reference as if fully set forth herein.

39. The Agreement executed by Moon is a valid and binding contract.

40. Moon's use, disclosure, and inevitable continued disclosure of Hexagon's confidential, proprietary, and trade secret information constitute a breach of the confidentiality provision contained in Paragraph 4 of the Agreement, attached as **Exhibit B**.

41. As a result of Moon's conduct, Hexagon has suffered irreparable injury, and there is immediate and imminent danger that Hexagon will continue to suffer irreparable injury for which there is no adequate remedy at law.

42. Hexagon is entitled to preliminary and permanent injunctive relief against further breaches of the Agreement. Hexagon further has suffered damages as a direct result of these breaches which include, but are not limited to, lost profits and attorney's fees.

**COUNT III**
**BREACH OF FIDUCIARY DUTY**

43. Paragraphs 1 through 42 of this Complaint are realleged and incorporated herein by reference as if fully set forth herein.

44. Moon has duties of loyalty to Hexagon.

45. Moon assumed a position of trust and confidence during his employment with Hexagon. He was placed in positions of trust and confidence with regard to Hexagon's confidential information and trade secrets in his possession and has fiduciary obligations not to use or disclose this information during or upon termination of his employment.

46. Moon has breached his fiduciary duties by misappropriating, disclosing, and using the confidential information and trade secrets of Hexagon in competition with Hexagon and on behalf of API.

47. Moon will, unless restrained, continue to violate Hexagon's rights and continue to ignore his duties not to disclose or use proprietary information and trade secrets of Hexagon.

48. As a proximate cause of Moon's breaches of his fiduciary duties, Hexagon has sustained irreparable harm. As such, Hexagon is entitled to a permanent injunction enjoining Moon from breaching his fiduciary duties.

**COUNT IV**
**MISAPPROPRIATION OF TRADE SECRETS UNDER RIUTSA**

49. Paragraphs 1 through 48 of this Complaint are realleged and incorporated herein by reference as if fully set forth herein.

50. Defendant Moon was among a select few placed in positions of trust and confidence with regard to Hexagon's confidential, proprietary, and trade secret information in his possession. Moon has fiduciary obligations not to disclose this information or use this information for his own competitive advantage.

51. Hexagon's confidential, proprietary, and trade secret information is not generally available to the public at large and has commercial value as a result of not being publicly known. Moreover, Hexagon takes reasonable efforts to keep this information secret and confidential. As such, Hexagon's confidential and proprietary information constitutes trade secrets.

52. Competitors, such as API, would not have legitimate access to Hexagon's confidential information and trade secrets.

53. Moon gained access to Hexagon's trade secrets and confidential information by virtue of his employment with Hexagon.

54. Moon has used, and/or inevitably will use, these trade secrets to compete unfairly with Hexagon and solicit Hexagon's customers, prospective customers, and employees.

55. Moon's conduct violates the Rhode Island Uniform Trade Secrets Act, R.I. Gen. Laws § 6-41-1 *et seq*.

56. As a result of Moon's conduct, Hexagon has suffered irreparable injury, and there is immediate and imminent danger that Hexagon will continue to suffer irreparable injury for which there is no adequate remedy at law.

57. Hexagon is entitled to preliminary and permanent injunctive relief against further misappropriation of trade secrets. Hexagon further has suffered damages as a direct result of these breaches which include, but are not limited to, lost profits and attorney's fees.

**COUNT V**
**ATTORNEYS' FEES AS AUTHORIZED UNDER RIUTSA**

58. Paragraphs 1 through 57 of this Complaint are realleged and incorporated herein by reference as if fully set forth herein.

59. Moon has used, and inevitably will continue to use, Hexagon's proprietary information and relationships developed with Hexagon's customers for the benefit of API.

60. Moon has willfully and maliciously misappropriated Hexagon's proprietary and trade secret information and competitive business relationships for the benefit of API.

61. By misappropriating and using Hexagon's trade secret information, and continuing to use Hexagon's proprietary information and competitive business relationships for the benefit of API, Moon is willfully and maliciously misappropriating trade secrets and proprietary information from Hexagon.

62. Hexagon has incurred, and will continue to incur, attorneys' fees to enforce its rights under the Rhode Island Uniform Trade Secrets Act in order to protect its proprietary information and trade secrets from willful and malicious misappropriation by Moon.

63. Accordingly, Hexagon must be awarded reasonable statutory attorneys' fees in addition to damages in excess of $75,000, as well as a preliminary and permanent injunction as set forth in this Complaint.

**REQUEST FOR RELIEF**

**WHEREFORE**, Hexagon requests:

(1) That this Court issue a Temporary Restraining Order and Preliminary and Permanent Injunction restraining and enjoining Defendant Moon, directly or indirectly:

(a) From rendering any services for or commencing or continuing employment, individually or otherwise, with API, or with any other competing entity of Hexagon, within Texas and Oklahoma until one year from the date of entry of this Court's order;

(b) From soliciting or performing services for any Hexagon customer, prospective customer, or supplier until one year from the date of entry of this Court's order;

(c) From soliciting or being involved in the recruitment or hire of any Hexagon employee until one year from the date of entry of this Court's order;

(d) From ever using or disclosing any of Hexagon's confidential, proprietary or trade secret information or property;

(e) From interfering, in any way, with any current customer or employee relationship of Hexagon; and

(f) From engaging in deceptive acts or statements with regard to Hexagon's abilities, experiences and personnel;

(2) That Defendant Moon be ordered in the form of a mandatory preliminary injunction to return all Hexagon property to Hexagon, including all originals and copies of tangible property, proprietary documents, trade secrets, confidential information, processes, research and development, products and services under development, computer program designs, flow charts, source and object codes, markets and selling strategies, power generating, servicing, purchasing, accounting, engineering, costing strategies, sources of supply, customer lists, customer requirements, business methods or practices, training and training programs, pricing and pricing strategies, customer information, customer pricing, margin information, methodology for improving accuracy statements of laser trackers invention information, discs, notes, client files, employment information, business development information, request for proposal, request for bid, client correspondence, meeting minutes, notes of site visits, marketing data, prospect meeting data, network diagrams, proposals, faxes, floor plans, engineering diagrams, financial information, contracts, technical specifications and matters, design documents, survey designs, marketing brochure, building plans, data network specifications, recommendations including but not limited to vendor recommendations, survey results, marketing database, marketing plans, costs, internal weaknesses, prospect lists, marketing plans, employee lists, alliance relationships, competitive bid information, client contact lists, sales leads, prospective employee lists, business plans, profit, margin, and forecasting information, strategic planning, project costs, and any other Hexagon data kept in any form or media whatsoever;

(3) That after trial in this action, a permanent injunction be issued to the same effect as the preliminary injunction requested above;

(4) That the Court permit expedited discovery of the foregoing issues; and

(5) That Hexagon be granted as relief money damages, including exemplary damages, lost profits, all other appropriate damages, as well as all interest, costs, and disbursements of this

action, including actual attorneys' fees and costs, and such other relief as this Court may deem just and proper.

Respectfully submitted,

By: ______________________________

Todd M. Reed (#6602)
Robert J. Durant (#4279)
EDWARDS ANGELL PALMER & DODGE LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (Fax)
E-mail: treed@eapdlaw.com
rdurant@eapdlaw.com

Co-Counsel

BUTZEL LONG
James J. Giszczak (MI P46917)
Bernard J. Fuhs (MI P69621)
150 West Jefferson, Suite 100
Detroit, Michigan 48226
(313) 225-7000
E-mail: giszczak@butzel.com
fuhs@butzel.com
*Pro Hac Vice Admission Pending*

Dated: July 18, 2008

Attorneys for Plaintiffs

**VERIFICATION**

Lester Glover, first being duly sworn, deposes and states that he is the Director of Business Development – South Region - for Hexagon Metrology, Inc., Plaintiff in the above-entitled action; that he has read the foregoing Verified Complaint and knows the contents thereof; and that the statements of fact above are true to the best of his knowledge, information, and belief.

LESTER GLOVER

Sworn to and subscribed before me
this the 17 day of July, 2008.

Notary Public
1016359.1

DEBRAH A. BOYD
STATE OF TENNESSEE NOTARY PUBLIC
DAVIDSON COUNTY
My Commission Expires May 8, 2012