# EXHIBIT B

HEXAGON METROLOGY NORTH AMERICA

REV. 3

**HEXAGON HOLDINGS, INC.**

**EMPLOYEE INVENTION, NON-COMPETITION, AND CONFIDENTIALITY AGREEMENT**

THIS EMPLOYEE INVENTION, NON-COMPETITION, AND CONFIDENTIALITY AGREEMENT (this "Agreement", which includes all appendices and schedules) is made as of this _______ day of __________________, 20_______, by and between Hexagon Holdings, Inc. (the "Company") and _____________________________________________ (referred to herein as "me" or "I").

**RECITALS**

A. The Company will, during the course of my employment with and training by the Company, impart to me proprietary, confidential, and/or trade secret information, data, and/or materials of the Company;

B. The Company has a vital legitimate interest in maintaining its confidential information and trade secrets, as well as its rights to inventions, to enable the Company to compete effectively and thereby enhance the value of the Company to its shareholders; and

C. The Company desires to continue to procure my services, and I am willing to be employed by the Company upon the terms and subject to the conditions set forth below.

NOW, THEREFORE, in consideration of my continued employment with the Company and other good and valuable consideration, I hereby agree with the Company as follows:

1. **Definitions**. In this Agreement the terms defined parenthetically elsewhere, and the following terms, shall have the meanings there and here supplied. Terms may be used in the singular or plural.

1.1. "The Company" means Hexagon Holdings, Inc., its successors and assigns, and any of its current or future subsidiaries, or organizations controlled by, controlling, or under common control with it.

1.2. "I" means the captioned employee, who is also referred to by the use of first person pronouns such as "me" and "my".

1.3. "Confidential Information" means information disclosed to me or known by me as a consequence of, or through, my employment with the Company (including information conceived, originated, discovered, or developed in whole or in party be me), not generally known in relevant trade or industry, about the Company business, products, processes, and service including but not limited to information relating to research, development, inventions, computer program designs, flow charts, source and object codes, products and services under development, pricing and pricing strategies, markets and selling strategies, power generating, servicing, purchasing, accounting, engineering, and costing strategies, sources of supply, customer lists, customer requirements, business methods or practices, training and training programs, and the documentation thereof.

1.4. "Inventions" means discoveries, concepts, and ideas, whether or not patentable, copyrightable, or protectable as a mask work, including but not limited to processes, methods, formulas, and techniques, as well as improvements thereof or know-how related thereto, relating to any current or prospective activities of the Company with which activities I am acquainted as a consequence of my employment by the Company.

1.5. "Conflicting Product" means any product, process, or service of any person or organization other than the Company, in existence or under development, which substantially resembles and competes with a product, process, or service of the Company upon or with which I work during the one (1) year prior to the termination of my employment by the Company or about which I acquire (at any time) Confidential Information.

1.6. "Conflicting Organization" means any person or organization or any person or organization controlled by, controlling, or under common control with such person or organization, which is engaged in, or is about to become engaged in, research on or development, production, marketing, or selling of, a Conflicting Product.

1.7. "Works" means all material and information created by me in the course of or as a result of my employment by the Company which is fixed in a tangible medium of expression, including, but not limited to, notes, drawings, memoranda, correspondence, documents, records, notebooks, flow charts, computer programs, and source and object codes, regardless of the medium in which they are fixed.

2. **Disclosure and Assignment of Inventions.** With respect to inventions made or conceived by me, whether or not during my hours of employment or with the use of Company facilities, materials, or personnel, either solely or jointly with another or others, during (i) my employment with the Company or (ii) within one (1) year after termination of my employment without royalty or other consideration to me therefor:

2.1. I will inform the Company promptly and fully of such Invention by a written report setting forth in detail the procedures employed and the results achieved. I will submit a report to the Company upon completion of any and all studies or research projects undertaken on the Company's behalf, whether or not a given project has, in my opinion, resulted in an Invention.

2.2. I will apply, at the Company's request and expense, for U.S. and foreign letters patent or copyright registration either in my name or otherwise as the Company shall desire.

2.3. I will assign to the Company all of my rights to such Inventions, and to applications for U.S. and/or foreign letters patent and copyrights, and to U.S. and/or foreign letters patent and copyrights granted upon or issued in respect of such Inventions.

2.4. I will acknowledge and deliver promptly to the Company (without charge to the Company but at its expense) such written instruments and do such other acts, such as giving testimony in support of my inventorship or original authorship, as may be necessary in the opinion of the Company to obtain and maintain U.S. and/or foreign letters patent and copyright registrations and vest the entire rights and title thereunto in the Company.

2.5. I will not disclose any inventions to any person outside the Company without the Company's written permission. For example, I will not publish any invention without the Company's written permission.

3. **Rights in Other Matters.** I agree that:

3.1. The Company will have the royalty-free right to use in its businesses, and to use, make, and sell products, processes, and/or services derived from any inventions, discoveries, concepts, and ideas, whether or not patentable or copyrightable, including but not limited to processes, methods, formulas, and techniques, as well as improvements thereof or know-how related thereto, which are not within the scope of inventions but which are conceived or made by me during the hours which I am employed by the Company or with the use or assistance of the Company's facilities, materials, or personnel.

3.2. All Works created by me, both past and future, during my employment by the Company will be and remain exclusively the property of the Company. Each such Work is a "work made for hire", and the Company may file applications to register copyright as author thereof. I assign to the Company all rights, including all copyright rights throughout the world, including all renewals and extensions thereof, in and to all Works created by me, both past and future, during my employment by the Company. I will take whatever steps and do whatever acts the Company requests, including but not limited to, placement of the Company's proper copyright notice on such Works to secure or aid in securing copyright protection and will assist the Company or its nominees in filing applications to register claims of copyright in such Works. I will not reproduce, distribute, display publicly or perform publicly, alone or in combination with any data processing or network systems, any Works of the Company without the written permission of the Company.

4. **Confidentiality**. I acknowledge that all Confidential Information is and shall at all times remain the property of the Company. I agree that, except as required in my duties to the Company, I will never directly,

indirectly, or otherwise use, disseminate, disclose, lecture upon, or publish articles concerning Confidential Information without having first obtained written permission from the Company to do so. I will safeguard and maintain on Company premises, to the extent possible in the performance of my work for the Company, all documents and things that contain or embody Confidential Information.

5. **Return of Documents.** Upon termination of my employment with the company, I will return to or leave with the Company all documents, records, notebooks, and other repositories of or containing Confidential Information, including all copies thereof, as well as all originals and all copies of Works, or other tangible Company property, whether prepared by me or others then in my possession or under my control.

6. **Nonassertion**. Except for matters listed in Schedule A to this Agreement, I will not assert any rights under any inventions, discoveries, concepts, or ideas or improvements thereof, or know-how related thereto, or having been made or acquired by me prior to my being employed by the Company, or since the date of my employment and not otherwise covered by the terms of this Agreement.

7. **Nonsolicitation**. Independent of any obligations I might have under §9, I agree that I will not, during my employment and for a period of 90 days after my voluntary termination of employment with the Company, directly or indirectly, (a) divert or attempt to divert any person, concern, or entity which is furnished services by the Company from doing business with the Company or otherwise to change its relationship with the Company; or (b) induce or attempt to induce any customer or supplier of the Company to cease being a customer or supplier of the Company or otherwise to change its relationship with the Company.

8. **Solicitation of Company Employees**. I agree that, during my employment with the Company and for a period of one (1) year following termination of my employment with the Company, whether terminated with or without cause, I shall not directly or indirectly, solicit or induce, or attempt to solicit or induce, any employee of the Company to leave the Company for any reason whatsoever.

9. **Restrictions on Competition**. Independent of any obligations that I might have under §7, I agree that I will not, for a period of 90 days after my voluntary termination of employment with the Company, render services directly or indirectly, whether as principal or as agent, officer, director, employee, consultant, shareholder, or otherwise, alone or in association with any other person, corporation, or entity, to or for any Conflicting Organization within the United States. I may, however, accept employment in such territory with a Conflicting Organization whose business is diversified, and which as to the part of the business in which I am engaged is not a Conflicting Organization, provided that the Company, prior to my accepting such employment shall receive separate written assurances satisfactory to the Company from such Conflicting Organization and from me, that I will not render services, directly or indirectly, in connection with any Conflicting Product. I recognize that the Company conducts or intends to conduct business within the geographic area set forth herein, and therefore, I agree that this restriction is reasonable and necessary to protect the Company's business.

10. **Assignability**. All my obligations under this Agreement shall be binding upon my heirs, assigns, and legal representatives and all of the obligations of the company shall be binding upon its successors and assigns. The Company shall have the right to assign this Agreement to a successor to all or substantially all of the business or assets of the Company or any division or part of the Company with which I shall be employed.

11. **Obligations Survive Termination of Employment**. Termination of my employment, whether voluntary or involuntary, whether with or without cause, shall not impair or relieve me of my obligations hereunder.

12. **Governing Law**. This Agreement shall be construed in accordance with and governed for all purposes by the law of the State of Rhode Island. The parties believe that the restrictions and covenants in the Agreement are, under the circumstances, reasonable and enforceable. However, if any one or more of the provisions contained in this Agreement shall, for any reasons under the law as it shall then be construed, be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions of this Agreement, but this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein. Moreover, if any one or more of the provisions contained in this Agreement shall for any reason be held to be excessively broad as to time, duration, geographical scope, activity, or subject, it shall be

construed by limiting and reducing it, so as to be enforceable to the extent compatible with the applicable law as it shall then appear.

13. **At-Will Employment**. My employment is at will, which means that unless otherwise provided by a separate writing authorized by me and the Company, my employment is for no definite term and either party may terminate the employment relationship at any time for any or for no reason.

14. **Supersession**. This Agreement is duly signed by the authorized representatives of the parties and supersedes and replaces any existing Agreement, written or otherwise, entered into by me and the Company relating generally to the same subject matter.

15. **Remedy**. Any breach or violation by me of the Agreement, including but not limited to §7 and §9, will result in immediate and irreparable injury to the Company in amounts difficult to ascertain. Therefore, should I breach any portion of this Agreement, I agree that the Company shall be entitled to proceed directly to court to obtain the remedies of specific performance and injunctive relief (including but not limited to temporary restraining orders, preliminary injunctions, and permanent injunctions) without the necessity of posting a bond or other undertakings therewith.

17. **Employee Acknowledgments**. I acknowledge that I have read and understand the provisions of this Agreement, that I have been given an opportunity for my legal counsel to review this Agreement, that the provisions of this Agreement are reasonable, and that I have received a copy of this Agreement.

______________________________ __________________

Print Name: Date:

______________________________

Signature

**Schedule A**

List any unpatented or uncopyrighted inventions, discoveries, concepts, ideas, improvements, and developments, whether patentable or unpatentable, copyrighted or uncopyrightable, made or conceived prior to the date of execution of this Agreement which are excluded from this Agreement.

________________________________________________________________

________________________________________________________________

________________________________________________________________

________________________________________________________________

________________________________________________________________

________________________________________________________________

________________________________________________________________

________________________________________________________________

________________________________________________________________

________________________________________________________________

Note: If none, state "NONE". Also, it is not necessary to record issued patents or copyrights, pending patent or copyright applications, or prior inventions previously assigned or agreed to be assigned to others.

__________________________
Name: (Employee)

For: Hexagon Holdings, Inc.

____________________________
By:
Title:

_______________________
Witness